<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARIA LANDETA,                    :

               Plaintiff,     :
                       :    Civil Action No. 04-2311(JWB)
          v.              :
                       :    **O P I N I O N**
COMMISSIONER OF                   :
SOCIAL SECURITY,
                       :
               Defendant.    :
                       :

**<u>APPEARANCES</u>**:

     LANGTON & ALTER
     By:  Abraham S. Alter, Esquire
     2096 St. Georges Avenue
     P.O. Box 1798
     Rahway, New Jersey  07065
     (Attorneys for Plaintiff)

     CHRISTOPHER J. CHRISTIE
     United States Attorney
     By:  Andreea L. Lechleitner
          Special Assistant United States Attorney
     c/o Social Security Administration
     Office of the General Counsel
     26 Federal Plaza, Room 3904
     New York, New York  10278-0004
     (Attorney for Defendant)

**BISSELL**, <u>Chief Judge</u>

     This matter is brought before the Court on an appeal by plaintiff Maria Landeta to review the final determination of the Commissioner of Social Security, which denied plaintiff's application for Supplemental Security Income Benefits and

Disability Insurance Benefits under the Social Security Act, 42 U.S.C. § 423, et seq.   The Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(g).

**FACTS and PROCEDURAL HISTORY**

**I.  Parties**

Plaintiff Maria Mercedes Landeta ("plaintiff") is a resident of New Jersey who alleges that she has been disabled due to severe orthopedic, psychiatric and skin conditions.  (Plaintiff's Compl., ¶ 5).  Defendant Jo Anne Barnhart, Commissioner of Social Security Administration ("Commissioner") is charged with the administration of the United States Social Security Act. (Defendant's Ans. at 1; Plaintiff's Compl., ¶ 3).

**II.  Procedural History**

On August 9, 2001, plaintiff filed an application for Supplemental Security Income Benefits.  (Plaintiff's Compl., ¶ 4).  In addition, plaintiff submitted an application for Disability Insurance Benefits on March 27, 2002.  (Id.)  The defendant denied plaintiff's original application and her application for reconsideration.  (Plaintiff's Br. at 1).  In response, plaintiff requested a hearing before an Administrative Law Judge ("ALJ") to review her application de novo.  (Id.)  On November 25, 2002, a hearing was held before the Honorable Ralph J. Muehlig, at which time the plaintiff appeared and testified. (Tr. 148).  The ALJ issued his opinion on December 13, 2002,

-2-

denying plaintiff's application for benefits.  (Tr. 123).
Plaintiff petitioned the Appeals Council for a review of the
ALJ's decision.  On March 18, 2004, the Council concluded that no
grounds for a review existed and denied plaintiff's request.
(Tr. 5).  Thereafter, on May 14, 2004, plaintiff commenced the
instant action seeking a review of the ALJ's decision.

## III. Plaintiff's Background, Work Experience and Non-Medical Evidence

Plaintiff alleges that she became disabled on August 1,
1991.  (Tr. 40; Tr. 43, 48).  Plaintiff was 52 years of age at
the time of disability and was 63 years old at the time the ALJ
announced his decision denying plaintiff's application.  (Tr.
40).

Plaintiff's marriage ended in divorce about 25 years ago and
she remains single, with no children.  (Id.)  Currently,
plaintiff lives by herself in Linden, New Jersey.  (Plaintiff's
Compl. at 1).  Her monthly income consists of Social Security
payments.  (Id.)  At the November 25, 2002 hearing, plaintiff
testified that these payments were insufficient for her.  (Tr.
149).

Plaintiff's daily activities include grocery shopping,
cooking and performing some household chores.  (Tr. 76).  During
the ALJ hearing, plaintiff testified that she was able to do
household chores but doing so caused pain the following day.
(Tr. 151).  She liked to read, watch television, and visit family

and friends once a week.  (Tr. 76).  Plaintiff indicated that she
is able to travel by herself and can utilize the public
transportation system.  (Id.)

Plaintiff did not receive education beyond sixth grade and
has not received any type of special job training, trade, or
vocational school.  (Tr. 64).  From 1968 to 1987, plaintiff
worked as an equipment operator in a factory, manufacturing
needles for record players.  (Tr. 64, 81, 152).  Her latest
employment, between 1989 and 1991, involved work as a food
assembler at an airport.  (Tr. 59).  Plaintiff described this
position as requiring her to stand for eight hours a day and,
occasionally, to lift goods weighing up to 10 pounds.  (Tr. 70).
Allegedly, plaintiff discontinued her employment in 1991 due to
pain in her shoulder, arms and knees (spreading to her back) and
due to psoriasis.  (Tr. 58, 108).  For treatment purposes,
plaintiff takes Celebrex twice a day for pain.  (Tr. 79).
Plaintiff further alleges that she suffers from arthritis,
thyroid problems, allergies and psoriasis.  (Tr. 58).

With regard to plaintiff's mental condition, she asserted
that she is under the treatment of a psychiatrist for an
addiction to a medicine that was prescribed to her 20 years ago
in connection with a nervous breakdown.  (Tr. 151).  According to
plaintiff's testimony, she had no difficulty thinking, but she
experienced a problem with her concentration.  (Id.)

**IV.  Medical Evidence**

    1.    <u>Examination by Queens Health Network's
        Department of Psychiatry</u>

Plaintiff has been examined by physicians on four different occasions since the year 2000.  One examination took place at Queens Health Network's Department of Psychiatry on October 26, 2000.  The need for medication compelled plaintiff to initiate this visit.  (Tr. 101).  In the general questionnaire which she completed, plaintiff indicated that she has some general anxiety problems as well as a thyroid problem.  (Tr. 102, 104).

Upon examination, a physician concluded that plaintiff's orientation to person, place, time, concentration and memory was within normal limits.  (Tr. 106).  In addition, plaintiff's funds of knowledge, judgment, insight and impulse control all were found to be within normal limits.  (<u>Id</u>.)  The examining physician's initial diagnostic impression reveals that plaintiff suffered hypertension, and hyperthyroidism, among other things. (Tr. 107).  As an initial treatment plan, plaintiff was given a follow-up appointment and a prescription.  (<u>Id</u>.)  The record does not reveal the nature of the medication prescribed to plaintiff. (<u>Id</u>.)

    2.  <u>Examinations by Commissioner's Physicians</u>

        <u>*A.  The Commissioner's Psychiatrist*</u>

As part of the Social Security Benefits application process, the Commissioner requested the examination of plaintiff by

-5-

several physicians.  Dr. Richard King, a psychiatrist, became the
first physician to evaluate the plaintiff as part of the Physical
Residual Functional Capacity Test ("PRFCT").  During an interview
with Dr. King on October 15, 2001, the plaintiff claimed that she
had no history of psychiatric hospitalizations.  (Tr. 108).  Dr.
King also reported that at the time of the interview, the
plaintiff was receiving outpatient treatment at Elmhurst General
Hospital and was taking Elavil, which had been helpful.  (Id.)
Plaintiff was also taking Celebrex and Levothyroxin.  Dr. King
noted that plaintiff had no history of hallucinations, delusions,
or actual suicidal behavior.  (Id.)

    Plaintiff reported that she is able to perform routine
activities daily such as household chores and shopping.  (Id.)
She lived by herself, had contact with family and friends,
attended church, read the Bible and had adequate concentration.
(Id.)

    Dr. King observed that plaintiff established a good rapport,
was in no acute distress and was cooperative.  (Id.)  There were
no hallucinations, delusions, suicidal ideations, and ideas of
reference or paranoid trends elicited.  (Id.)  Plaintiff is not
considered to be a suicidal risk.  (Id.)  Dr. King further found
that plaintiff's intellectual functioning was on an average
level.  (Id.)  Dr. King also found that plaintiff's attention and
concentration were adequate and that she was oriented to time,

place and person.  (Id.)  Although Dr. King diagnosed an adjustment disorder of adult life, anxiety and depression of a mild degree, he determined that "the claimant has a satisfactory ability to understand, carry out and remember instructions, and a satisfactory ability to respond appropriately to supervision, co-workers and work pressures in a work setting."  (Tr. 109).

### B.  The Commissioner's Radiologist

On November 19, 2001, Dr. Liebman, a radiologist, interpreted the results of a radiographic examination of plaintiff's lumbosacral spine and right knee.  Dr. Liebman concluded that the spine was in good condition with minimal osteophyte formation.  (Tr. 110).  Concerning plaintiff's right knee, the X-rays did not provide evidence of acute fracture, dislocation or destructive bony lesion.  (Id.)  The joint spaces were relatively well maintained.  (Id.)  Therefore, Dr. Liebman determined that plaintiff's knee was also in good condition. (Id.)

### C.  The Commissioner's Internist

On November 16, 2001, at the request of the Commissioner, plaintiff was examined by Dr. Soo Park, specializing in internal medicine.  (Tr. 111).  Plaintiff reported that she had suffered pain caused by arthritis for one and one-half years.  (Id.)  In addition, plaintiff claimed to have experienced psoriasis for many years as well as thyroid problems and depression.  (Id.)

-7-

She also disclosed a history of pain in different joint areas including her shoulders, arms and back area for one and one-half years.  (<u>Id</u>.)  For her arthritis, plaintiff used Celebrex, and her psoriasis was treated with Betakethasone cream as well as Cortisone cream.  (<u>Id</u>.)  The hypothyroidism treatment consisted of Levothyroxine.  (<u>Id</u>.)  For her depression, she currently uses Amitiptyline.  (<u>Id</u>.)  Her depression symptoms are under control. (<u>Id</u>.)

Dr. Park observed that plaintiff has minimal psoriatic rashes in the arm and leg area.  (Tr. 111).  Her skin was moist and well perfused.  (<u>Id</u>.)  There was no cyanosis or jaundice. (<u>Id</u>.)  Plaintiff was able to undress and dress and get on and off the examination table without any difficulty.  (<u>Id</u>.)  She was walking normally, and was not using a cane.  (<u>Id</u>.)

An examination of plaintiff's chest revealed the absence of wheezes, rhonchi, or rales.  (<u>Id</u>.)  Plaintiff's heart exhibited a regular rhythm, no murmurs and no gallops.  (<u>Id</u>.)  Dr. Park also observed that plaintiff had a normal range of motion of upper and lower extremities and that she was able to walk on tiptoes and heels.  (Tr. 112).  Plaintiff had no clubbing, cyanosis or edema. (<u>Id</u>.)  An examination of the musculoskeletal system revealed that plaintiff's station and gait were normal.  (<u>Id</u>.)  Dr. Park observed that plaintiff had no difficulty transferring from a seated position on and off the examining table.  (<u>Id</u>.)  He also

-8-

determined that plaintiff had full use of both hands and arms in dressing and undressing. (Id.) Plaintiff's finger and hand dexterity were normal. (Id.) Her lumbar spine had a normal range of motion and her remaining joints had a full range of motion without deformities, swelling, warmth or tenderness. (Id.) Dr. Park did not find any indication of atrophy, spasm, subluxation, contractures, ankylosis or instability. (Id.)

Lastly, Dr. Park conducted a neurological examination of the plaintiff. Dr. Park concluded that plaintiff was alert and oriented. (Tr. 112). Plaintiff's cranial nerves were intact. She was able to raise a straight leg to 80 degrees. (Id.) Her motor and sensory systems were normal. (Id.)

Overall, Dr. Park's examination of plaintiff revealed osteoarthritis at different joint areas but the range of motion was still unaffected. (Tr. 112). Dr. Park also diagnosed: psoriasis with minimal skin changes, thyroid problems with hypothyroidism, and depression. (Id.) On the basis of his evaluation, Dr. Park concluded that plaintiff experienced limitations of a mild degree with regard to lifting, bending, walking, standing, pushing and pulling. (Id.)

### D.  The Commissioner's Psychiatrist

As part of the Residual Functional Capacity Test ("RFCT"), the Commissioner requested that plaintiff submit herself to an examination by Dr. S. Hou, a psychiatrist. On February 21, 2002,

-9-

Dr. Hou conducted a Mental Residual Functional Capacity Test ("MRFCT").  After considering the plaintiff's medical records and the test results, Dr. Hou concluded that she was not significantly limited in understanding and memory, sustained concentration and persistence.  (Tr. 125-26).  The test pointed to a moderate limitation pertaining to plaintiff's ability to understand and remember detailed instructions, her ability to carry out detailed instructions, her ability to maintain attention and concentration for extended periods and her ability to perform activities within a schedule.  (Tr. 125).  Dr. Hou also determined that plaintiff's ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods was moderately limited.  (Tr. 126).  Lastly, plaintiff's ability to respond appropriately to changes in the work setting was also moderately limited.  (Id.)

Dr. Hou indicated in a written report that plaintiff had "moderate limitations" with regard to restrictions on activities of daily living, difficulties on maintaining social functioning, difficulties in maintaining concentration, persistence, or pace. (Tr. 139).  According to Dr. Hou, the plaintiff was able to understand, remember and carry out simple tasks.  (Tr. 127). Plaintiff also exhibited a capacity to relate appropriately to

-10-

co-workers and supervisors in a routine work setting.  (<u>Id</u>.)

## DISCUSSION

### I.  Standard of Review

Findings of fact by the ALJ must be accepted as conclusive
by a reviewing court if they are supported by substantial
evidence.  <u>Cotter v. Harris</u>, 642 F.2d 700, 704 (3d Cir. 1981)
(citing <u>Lewis v. Califano</u>, 616 F.2d 73, 76 (3d Cir. 1980) and 42
U.S.C. § 405(g)).  "Substantial evidence is such relevant
evidence as a reasoning mind might accept as adequate to support
a conclusion."  (<u>Id</u>.)  A finding of substantial evidence
necessitates "more than a mere scintilla of evidence but less
than a preponderance."  <u>Dobrowolsky v. Califano</u>, 606 F.2d 403,
406 (3d cir. 1979).

In reviewing the decision of the ALJ, the court "need[s]
from the ALJ not only an expression of the evidence [he or she]
considered which supports the result, but also some indication of
the evidence which was rejected."  <u>Cotter</u>, 642 F.2d at 705 ("In
the absence of such an indication the reviewing court cannot tell
if significant probative evidence was not credited or simply
ignored.");  <u>see</u> <u>also</u> <u>Walton v. Halter</u>, 243 F.3d 703, 710 (3d Cir.
2001) (collecting cases in support of this proposition).
However, in deciding whether the ALJ's decision is supported by
substantial evidence, the court may not weigh the evidence or
substitute its judgment for that of the ALJ, even if the court

-11-

might have reached a different conclusion.  <u>Williams v. Sullivan</u>, 970 F.2d 1178, 1182 (3d Cir. 1992).  If the record, read as a whole, would allow a reasonable mind to accept the conclusions reached by the ALJ, the court must uphold his or her determination.  <u>Brown v. Bowen</u>, 845 F.2d 1211, 1213 (3d Cir. 1988) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)) (internal citation omitted).  Therefore, if the ALJ's decision is supported by substantial evidence, it must be affirmed.  42 U.S.C. § 405(g); <u>Richardson</u>, 402 U.S. at 401.

## II.  Statutory Standard for Disability Benefits Eligibility

To qualify for disability insurance benefits, a plaintiff must be "disabled" as defined by 42 U.S.C. § 423(d).  To be so "disabled" a plaintiff must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(f)((1)(A).  An impairment is not disabling unless it is of such severity that the plaintiff "is not only unable to perform his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  To prove the existence of a disability, a plaintiff must present evidence that her condition "results from anatomical, physiological or

-12-

psychological abnormalities which are demonstrable by medically accepted clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). "An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability ... there must be medical signs or findings ... which show the existence of a medical impairment ... which could reasonably be expected to produce the pain or other symptoms alleged and would lead to the conclusion that the claimant is under a disability." 42 U.S.C. § 423(d)(5)(A).

An ALJ considering a claim for Disability Insurance Benefits must employ the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520. See Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 117 (3d Cir. 2000). The first step requires the ALJ to determine whether the plaintiff has shown that she is not engaged in "substantial gainful activity," as defined in the regulation. If the plaintiff is engaged in such substantial gainful activity, the plaintiff is not disabled regardless of medical condition, age, education and work experience. Thus, the ALJ must deny the plaintiff's application. See 20 C.F.R. § 404.1520(b). The second step involves the determination by the ALJ whether the plaintiff has shown that she has a "severe" impairment or combination of impairments, which significantly limit her physical and/or mental ability to engage in basic work activities. See 20 C.F.R. § 404.1520(c). If the

-13-

plaintiff fails to establish the presence of a "severe" impairment or impairments, the ALJ must deny her benefits, regardless of age, education and work experience.  See id. Third, if the impairment is sufficiently severe and meets the duration requirement listed in Appendix 1, Subpart P, 20 C.F.R. § 404, the plaintiff will receive benefits.  See 20 C.F.R. § 404.1520(d).  If the plaintiff's impairments do not satisfy step three's requirements, the ALJ must proceed to step four, which requires the plaintiff to show that her impairment(s) prevents her from performing her past relevant work, due to a lack of sufficient "residual functional capacity," which is what she "can still do despite her limitations."  20 C.F.R. § 416.495(a).  If the ALJ finds that the plaintiff retains the capacity to perform past relevant work, the ALJ must find that she is not disabled. See 20 C.F.R. § 404. 1520(e).  Fifth, if the plaintiff cannot perform past relevant work, the ALJ must consider other factors including her residual functional capacity, age, education and past work experience to determine if she can perform other work in the national economy.  20 C.F.R. § 404.1520(f).

The Commissioner has set forth a three-part sub-test as part of the analysis to be performed under step four.  To determine a plaintiff's ability to perform past relevant work, an appraisal must be made of:  (1) the individual's statements regarding past work requirements that can no longer be met and the reason(s) for

her inability to meet those requirements; (2) medical evidence establishing how the impairment limits ability to meet physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources such as employers or the Dictionary of Occupational Titles, on the requirements of the work as generally performed in the economy.  <u>See</u> S.S.R. 82-62, 1975-1982 Soc. Sec. Rep. Serv. 809, 1982 WL 31386.

**III.  <u>Review of ALJ Muehlig's Analysis and Conclusions</u>**

     <u>1.  The ALJ's Analysis</u>

ALJ Muehlig's analysis leading to the conclusion that plaintiff did not qualify for disability benefits is based upon the five-step sequential analysis.  At step one of the evaluation process, the ALJ concluded that "the claimant has not engaged in substantial gainful activity since the alleged onset of disability." (Tr. 22).  Under the second step, the ALJ found that "claimant's osteoarthritis and an affective disorder is a severe impairment, based upon the requirements in the Regulations." (<u>Id</u>.)  Next, the ALJ evaluated whether plaintiff's impairments qualified according to the criteria set forth by Appendix 1, Subpart P, Regulation No. 4.  He determined that plaintiff's "medically determinable impairment did not meet or medically equal one of the listed impairments." (<u>Id</u>.)  This opinion was reached after the ALJ "carefully considered all of

the medical opinions in the record regarding the severity of the claimant's impairments." (Id.)  Because plaintiff's impairments did not meet or equal the listed impairments in Appendix 1, the ALJ proceeded to the fourth step of the five-step process.

At the fourth prong, the ALJ evaluated whether the plaintiff retained the capacity to perform past relevant work.  The ALJ's determination was made on the basis of a RFCT, taking into account all the relevant medical evidence and other evidence in the record.  See 20 C.F.R. § 404.1520(a)(5)(e).  The results of the RFTC test's two sub-tests, the PRCT and the MRCT, were compared with the physical and mental demands of past relevant work.  ALJ Muehlig determined that "(t)he claimant retains the residual functional capacity to perform medium work involving the lifting and carrying of twenty-five pounds, and standing, walking, and sitting for six hours during the course of an eight-hour workday." (Tr. 22).  "The claimant's past relevant work as food assembler did not require the performance of work-related activities precluded by her residual functional capacity." (Id.) Specifically, the ALJ concluded that "the claimant's medically determinable osteoarthritis, hypothyroidism, and an affective disorder does not prevent the claimant from performing her past relevant work." (Id.)

Based upon the ALJ's finding under the fourth step, the fifth step of the sequential evaluation process became

-16-

immaterial.  Consequently, the ALJ decided that the plaintiff was not under a "disability" as defined in the Social Security Act and that the plaintiff was not entitled to disability and Disability Insurance Benefits.  (Tr. 23).  Further, the ALJ concluded that the plaintiff did not qualify for Supplemental Security Income payments under the Social Security Act.  (<u>Id</u>.)

### 2.  Plaintiff's Arguments

Plaintiff claims that the ALJ failed to perform the analysis thoroughly and ignored the findings of Dr. Hou, the Commissioner's psychiatrist.  Plaintiff claims that the "moderate" limitations on her daily functioning, as diagnosed by Dr. Hou, prevent her from resuming her past relevant work. According to plaintiff, by omitting Dr. Hou's findings, the ALJ did not follow the Third Circuit's holding in <u>Cotter</u> that the ALJ must present not only an expression of the evidence he considered which supports the result, but also some indication of the evidence which was rejected.  (Plaintiff's Compl. at 17; <u>see also</u> <u>Cotter</u>, 642 F.2d at 705).  Second, plaintiff asserts that the ALJ's analysis did not comport with S.S.R. 82-62's requirements by not carefully considering the impact of the "moderate limitations" on plaintiff's ability to meet the mental and physical demands of her past relevant work.  (<u>Id</u>.)

       A.   *Findings of Dr. Hou do not Contradict*
          *the ALJ's Decision and were Considered*
          *by the ALJ in His Analysis*

As part of the process to determine a claimant's eligibility for Social Security Benefits, an RFCT is often required. According to 20 C.F.R. § 404.1540, such a test must be conducted in connection with the fourth and fifth step of the five-step sequential test.  In the case at bar, the RFCT was performed and is part of the record.  Based on the examinations by Dr. King, Dr. Liebman and Dr. Park, the PRCT results led the examiner to conclude that plaintiff "retains the exertional & mental capacity for PRW as a food assembler."  (Tr. 116).

The Mental Residual Test of the RFCT was performed by Dr. Hou, a psychiatrist.  Dr. Hou determined that plaintiff was moderately limited in a few respects.  (Tr. 125-26, 139).  But, overall, in 14 of the 20 points to be evaluated, Dr. Hou concluded that plaintiff was not significantly limited.  (Tr. 125-26).  Plaintiff argues that the six issues involving a "moderate limitation" were ignored by the ALJ when reaching the conclusion that plaintiff retains a residual capacity to perform past relevant work.  (Plaintiff's Br. at 10, 15).

This Court finds plaintiff's argument unpersuasive.  On page 21 of the transcript, the ALJ specifically cited Dr. Hou's findings and stated the following:  "With respect to the applicable B criteria of such listings, the evidence establishes

-18-

that the claimant experiences functional limitations including: slight restrictions of activities of daily living; slight difficulties in maintaining social functioning; slight deficiencies of concentration, persistence or pace; and no episodes of decompensation." (Tr. 21). While plaintiff is correct that Dr. Hou elected "moderate" to characterize some of plaintiff's limitations, plaintiff fails to take note of the asterisks placed next to "marked*" and "extreme*". The asterisk symbol means it is a "degree of limitation that satisfies the functional criterion." (Tr. 139). Therefore, Dr. Hou's analysis is not in conflict with the ALJ's decision and plaintiff's limitations did not satisfy the functional criteria.

In addition, Dr. Hou's comments that "although claimant has a psychiatric diagnosis, ADL's remain relatively intact" and that "claimant is able to understand, remember, and carry out simple tasks," satisfy the requirements of 20 C.F.R. § 404.1545(c). (Tr. 127). Dr. Hou further noted that "Claimant is able to relate appropriately to coworkers and supervisors in a regular work setting." (Id.) According to 20 C.F.R. § 404.1545(c), "a limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work" is taken into

consideration.  20 C.F.R. § 404.1545(c).  Dr. Hou's comments closely followed the factors mentioned by the Commissioner and specifically indicate that with regard to the factors of § 404.1545(c), plaintiff retains the ability to perform basically all of them.  (Id.)

Furthermore, the ALJ's decision is supported by Dr. King's findings.  Dr. King, also a psychiatrist, examined plaintiff as part of the PRFC Test and reached a conclusion similar to Dr. Hou's.  According to Dr. King, even though the plaintiff suffers an "[a]djustment disorder of adult life, anxious and depressed mild degree, in my opinion, the claimant has a satisfactory ability to understand, carry out and remember instructions, and a satisfactory ability to respond appropriately to supervision, co-workers and work pressures in a work setting."  (Tr. 109).  The ALJ specifically referred to Dr. King's findings in his analysis.  "As previously discussed, there was no evidence that the claimant had any limitations in understanding, carrying out, and remembering instructions; and she had no limitations in her ability to respond appropriately to supervision, co-workers, and work pressures in a work setting.  (Tr. 21).  Dr. King and Dr. Hou, both psychiatrist, substantially supported the ALJ's finding that plaintiff experiences some limitations on her ability to perform past relevant work, but these limitations are not severe enough to prevent plaintiff from returning to her past

employment.

In <u>Cotter v. Harris</u>, 642 F.2d 700 (3d Cir. 1981), the Third Circuit Court of Appeals stated that "(t)his Court has recognized that there is a particularly acute need for some explanation by the ALJ when s/he has rejected relevant evidence or when there is conflicting, probative evidence in the record." <u>Id</u>. at 706.  In <u>Cotter</u>, the Court pointed to a line of cases illustrating this point.  See, e.g., <u>Kennedy v. Richardson</u>, 454 F.2d 376 (3d Cir. 1972); <u>Hargenrader v. Califano</u>, 575 F.2d 434 (3d cir. 1978); <u>Schaaf v. Matthews</u>, 574 F.2d 157 (3d Cir. 1978); <u>Fargnoli v. Halter</u>, 247 F.3d 34 (3d Cir. 2001).

Plaintiff asserts that the ALJ's failure to specifically address Dr. Hou's conclusion constitutes a <u>Cotter</u> violation.  In <u>Cotter</u>, the lower court failed to address evidence that unequivocally supported the plaintiff's claim for benefits.  In contrast, in the present case, Dr. Hou's conclusion does not constitute relevant evidence that unequivocally supports plaintiff's application for disability benefits.  Furthermore, as discussed above, Dr. Hou's findings do not conflict with the overwhelming evidence in the record and are in line with Dr. King's observations.  Hence, plaintiff's argument that the ALJ's conclusion is in conflict with <u>Cotter</u> fails.

Even assuming that Dr. Hou's findings are in conflict with the ALJ's decision, an ALJ is not bound by any findings made by

state agency medical physicians.  <u>See</u> 20 C.F.R. §
404.1527(f)(2)(I).  Even if the ALJ omitted some evidence from
his discussion, such an omission "does not constitute reversible
error because the rest of the evidence ... supports the ALJ's
decision."  <u>Versace v. Barnhard</u>, 2002 U.S. Dist. LEXIS 15340, No.
01-cv-3909 (E.D. Pa. 2002) ("The omissions do not appear to
strongly favor plaintiff and, therefore, do not warrant remand to
the ALJ for further explanation.")  Hence, the ALJ's decision is
not in conflict with <u>Cotter</u>, and the plaintiff's argument
advocating a reversal of the ALJ's opinion must fail.

> B.   *The ALJ's Past Relevant Work Analysis*
> *is Sufficient*

     Plaintiff further asserts that the ALJ failed to discuss the
implications of plaintiff's moderate limitations, as diagnosed by
Dr. Hou, in connection with plaintiff's ability to perform her
past relevant work.  Therefore, plaintiff claims, the analysis as
part of step four of the five-step sequential analysis process is
inadequate.  To support her argument, plaintiff cites to Social
Security Ruling 82-62.

     Ruling 82-62, issued by the Commissioner, sets forth three
sub-steps to the fourth prong of the evaluation process.  The
first sub-step requires the ALJ to determine the plaintiff's
residual functional capacity.  Next, the ALJ must make findings
of fact as to the physical and mental demands of the plaintiff's
past job.  Lastly, findings of fact must be made regarding

whether the plaintiff's residual functional capacity would permit a return to her past employment.  See S.S.R. 82-62; Burnett, 220 F.3d at 120.

Another key provision of the ruling pertains to the analysis of whether the physical and mental demands of a plaintiff's past job permit a plaintiff to return to that past work.  With regard to this analysis, S.S.R. 82-62 provides that the plaintiff is the primary source for information pertaining to her past relevant work.  (See id.)  The statements made by the plaintiff are generally sufficient for determining the skills her work requires and the demands that her past relevant work placed on plaintiff.  (See id.)  Any medical evidence establishing how a plaintiff's ability to met the demands of her past relevant work is limited must be carefully considered.  (See id.)  Fact-finders, according to this ruling, may consult additional sources, such as the Dictionary of Occupational Titles.  (See S.S.R. 82-62).

This Court finds that the ALJ observed the guidelines set forth by the Commissioner in Ruling 82-62.  ALJ Muehlig followed the three sub-steps of the analysis under the fourth prong of the evaluation process.  As the ALJ's analysis evidences, he considered plaintiff's residual functional capacity based on the results of the RFCT.  (Tr. 19, 20, 21).  Plaintiff's own statements concerning the demands of her past relevant work were taken into account by the ALJ.  (Tr. 21).  The ALJ also evaluated

the medical evidence in the record.  (Tr. 19, 20, 21).  Nothing in the medical records, including Dr. Hou's observations, unequivocally stated that plaintiff is unable to resume her past relevant work.  The fact that the ALJ neither used a Dictionary of Occupational Titles nor consulted vocational experts is not fatal in this case.[1]  Thus, the ALJ's decision is supported by substantial evidence and must be affirmed.

## CONCLUSION

For the foregoing reasons, the ALJ's decision is affirmed and plaintiff's appeal is denied.

```
/s/    John W. Bissell
       JOHN W. BISSELL
         Chief Judge
United States District Court
```

DATED:  May 16, 2005

---

[1]     Plaintiff argues that the ALJ should have cited the Dictionary of Occupational Titles or consulted a vocational expert. (Plaintiff's Br. at 15-16).  According to S.S.R. 82-62, the decision to utilize such sources is discretionary.  Moreover, S.S.R. 00-4p, 2000 WL 1898704, provides that the use of vocational experts is generally reserved for "resolving complex vocational issues."  Therefore, plaintiff's argument is unpersuasive.

-24-